FILED

SEP 10 2020

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | N   **4:20CR00504 JAR** |
| | ) | |
| PAUL ANDREW GNIADEK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, Paul Andrew Gniadek, represented by defense counsel,

Marc Johnson, and the United States of America (hereinafter "United States" or "Government"),

represented by the Office of the United States Attorney for the Eastern District of Missouri by

Assistant United States Attorney, Hal Goldsmith. This agreement does not, and is not intended

to, bind any governmental office or agency other than the United States Attorney for the Eastern

District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the

defendant's voluntary plea of guilty to Counts 1 - 3 of the charge, the United States agrees that no

further federal prosecution will be brought in this District relative to the defendant's scheme to

defraud John Volpi & Company, d/b/a Volpi Foods during the period March, 2015 through

April, 2019, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts 1 - 3, to forfeit to the United States all property subject to forfeiture under the applicable statutes.

## 3. **ELEMENTS:**

As to Counts One through Three, the defendant admits to knowingly violating Title 18, United States Code, Section 1341 (Mail Fraud), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1.  Defendant voluntarily and intentionally devised or participated in a scheme to defraud and to obtain money by means of material false or fraudulent pretenses or representations as detailed in the Information;

2.  The pretenses or representations were material, that is, they would reasonably influence a person to part with money;

3.  Defendant did so with the intent to defraud; and,

4.  In advancing, or furthering, or carrying out her scheme to defraud and to obtain money by means of false or fraudulent pretenses or representations, Defendant used or caused to be used the mail in furtherance of, or in an attempt to carry out, some essential step in the scheme.

4. **FACTS:**

      The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

      John Volpi & Company, d/b/a Volpi Foods, is a 100 plus year old food manufacturer and distributor with its headquarters located in the historic Hill neighborhood of St. Louis, Missouri.  The company primarily manufactures, cures, and distributes premium meats, such as salami, prosciutto, other deli meats and cheeses.

      The defendant, **PAUL ANDREW GNIADEK** (hereinafter referred to as "**GNIADEK**"), was the Senior Controller for Volpi Foods from on or about February 1, 1999 through March 26, 2019.  **GNIADEK** was a licensed Certified Public Accountant.  Some of **GNIADEK's** job duties as Senior Controller included operations analysis, accounting, forecasts and budgets, as well as the preparation of financial reports, the preparation and maintenance of accounting records, and controlling budgets.  **GNIADEK** maintained an office at the Volpi Foods headquarters in St. Louis, Missouri.

      Beginning in or about March, 2015 and continuing through in or about April, 2019, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendant, **GNIADEK,** devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from Volpi Foods by means of materially false and fraudulent pretenses, representations, and promises.

On one and more occasions, **GNIADEK** sent via electronic wire and via electronic automated clearing house ("ACH") transactions funds from Volpi Foods' Wells Fargo bank account to **GNIADEK's** personal E*Trade checking account. These funds transfers were carried out by **GNIADEK** without the knowledge or authority of Volpi Foods, and the funds were used by **GNIADEK** to pay for his own personal expenses, unrelated to the legitimate business and operations of Volpi Foods. **GNIADEK** used these funds, for example, to pay for his and his family's daily living expenses, to make payments to RocketLoans to pay down personal loans, to pay retailers such as BestBuy for personal items, and to pay for charges on his personal Chase and American Express credit cards. In order to conceal this aspect of his scheme, **GNIADEK** made false entries in the internal financial and accounting records of Volpi Foods which falsely reflected that the funds were electronically wired or sent by ACH to legitimate Volpi Foods vendors. **GNIADEK** made approximately 5 unauthorized funds transfers to his E*Trade checking account.

During 2018, Volpi Foods instituted an employee gift card incentive program. The program, which was facilitated through Wells Fargo Bank, provided incentives to employees by providing them with Wells Fargo Bank gift cards in various denominations between $10 and $150 for such occasions as birthdays, signing up for a gym membership, and participating in an annual wellness visit. Volpi Foods' Human Resources department oversaw this program, including maintaining an inventory of gift cards and distributing the gift cards to employees as appropriate. **GNIADEK** was responsible for ordering the gift cards from Wells Fargo Bank when requested to do so by the Human Resources department, and after **GNIADEK** received the gift card shipments from Wells Fargo Bank he was responsible for providing the cards to the Human Resources department for their ultimate distribution to Volpi Foods employees. On one and more occasions,

4

**GNIADEK** purchased Wells Fargo Bank gift cards, in $1,500 and $2,500 increments, for his own personal use, without the knowledge and authority of Volpi Foods. **GNIADEK** caused the purchase of those gift cards to be paid from Volpi Foods' Wells Fargo bank account, and used those gift cards to purchase personal items and pay for personal expenses unrelated to the legitimate business and operations of Volpi Foods. **GNIADEK** falsely accounted for these gift card purchases in the Volpi Foods' internal financial and accounting records as having been purchased as part of the legitimate gift card incentive program. **GNIADEK** made approximately 9 unauthorized purchases of Wells Fargo gift cards which he used to pay for personal use items and expenses.

In his position as Senior Controller, **GNIADEK** was issued a Wells Fargo Bank company credit card by Volpi Foods to be used to pay for legitimate company expenses, such as necessary travel and other business expenses. On one and more occasions, **GNIADEK** used his company issued Wells Fargo Bank credit card to make personal purchases, unrelated to the legitimate business and operations of Volpi Foods. Further, on one and more occasions, **GNIADEK** used the company issued credit card number of a former Volpi Foods employee to make personal purchases online via the internet. These company issued credit card purchases were done by **GNIADEK** without the knowledge and authority of Volpi Foods. In order to conceal this aspect of his scheme, **GNIADEK** made false entries in Volpi Foods' internal financial and accounting records falsely recording that these credit card transactions were for legitimate company expenses. **GNIADEK** made approximately 37 unauthorized company issued credit card purchases for personal use items and expenses.

5

The parties agree that the loss for relevant conduct purposes is $98,555.04.

On or about the dates listed below, within the Eastern District of Missouri and elsewhere, for the purpose of executing his scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, **GNIADEK** knowingly caused retailers to ship to **GNIADEK's** personal residence at 621 Crown Pointe Estates Court, Wildwood, Missouri, through the United States Postal Service, personal items fraudulently purchased by defendant by unauthorized use of his company issued Wells Fargo Bank credit card in the amounts identified below:

| COUNT | DATE | AMOUNT | RETAILER |
|-------|------|--------|----------|
| 1 | September 19, 2018 | $869.20 | Microsoft |
| 2 | September 27, 2018 | $2,860.60 | Levenger |
| 3 | October 5, 2018 | $2,135.54 | Microsoft |

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty is imprisonment of not more than twenty (20) years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than five (5) years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

6

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**:  The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics**:  The parties agree that the following Specific Offense Characteristics apply:

8 levels should be added, pursuant to Section 2B1.1(b)(1)(E), because the loss exceeded $95,000 but was less than $150,000.

b. **Chapter 3 Adjustments**:

(1) Abuse of Position of Trust:  The parties agree that 2 levels should be added, pursuant to 3B1.3, because defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense.

(2) Acceptance of Responsibility: The parties agree that 3 levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

c. **Other Adjustment(s)/Disputed Adjustments**:  None.

7

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 14.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing

8

Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A,

10

an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument. The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

11

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position

13

supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

August 14, 2020
/Date

HAL GOLDSMITH
Assistant United States Attorney

8/14/20
Date

PAUL ANDREW GNIADEK
Defendant

8/14/20
Date

MARC JOHNSON
Attorney for Defendant

14